**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-                **MEMORANDUM OF**
                                                      **DECISION AND ORDER**
GEORGE M. MOTZ, and MELHADO, FLYNN &    08-CR-598 (ADS)
ASSOCIATES, INC.,

                        Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, New York 11722
    By: James G. McGovern, Assistant United States Attorney
       Daniel A. Spector, Assistant United States Attorney
       Roger Anson Burlingame, Assistant United States Attorney
       William E. Schaeffer, Assistant United States Attorney

**GAGE SPENCER & FLEMING LLP**
Attorneys for Defendant George M. Motz
410 Park Avenue, 9th Floor
New York, NY 10022
    By: G. Robert Gage, Esq.
       Laura-Michelle Rizzo, Esq., Of Counsel

**ELLENOFF GROSSMAN & SCHOLE LLP**
Attorneys for Defendant Melhado, Flynn & Associates, Inc.
150 East 42nd Street
New York, NY 10017
    By: Ted Poretz, Esq., Of Counsel

**SPATT, District Judge**.

On November 19, 2008, a superseding indictment issued charging Defendants George Motz ("Motz" or "the Defendant") and Melhado, Flynn & Associates, Inc. ("MFA") with one count of securities fraud, in violation of 18 U.S.C. § 1348(1) ("Count One"), and one count of document alteration, in violation of 18 U.S.C. § 1519 ("Count Two"), in connection with a fraudulent "cherry-picking" scheme. Presently before the Court is a motion by Motz to dismiss the indictment or, in the alternative, to transfer venue to the Southern District of New York.

## I. BACKGROUND

Motz is an officer and minority owner of MFA, a registered broker-dealer and investment advisor located in Manhattan. Motz was a registered representative and investment advisor for 183 discretionary trading accounts at MFA. According to the superseding indictment, Motz also had the exclusive authority to trade on behalf of MFA's proprietary trading account.

The superseding indictment alleges that Motz engaged in "cherry-picking," a practice whereby a trader executes trades without immediately assigning them to a particular account. In this regard, the superseding indictment alleges that Motz purchased securities in the early part of the trading day and waited until later in the day—when he saw whether the securities purchased had appreciated in value—to allocate the securities to MFA's proprietary account. According to the superseding

indictment, if a trade proved unprofitable, Motz would allocate the securities to the Third Millennium Fund, Investment Fund #1, the discretionary client accounts or all three.

The superseding indictment alleges that of the 204 trades that Motz executed on behalf of the MFA proprietary account between November of 2000 and September of 2003, 202 were profitable. The superseding indictment also alleges that Motz used the remarkable success of the MFA proprietary account to market MFA to potential investors, including two hedge funds: Mezzacappa Partners, L.P. and The Third Millennium Fund. According to the Government, from June of 2003 until May of 2005, Motz employed the same "cherry-picking" scheme to benefit both of these funds.

According to the superseding indictment, Motz and other MFA representatives, in the ordinary course of business, prepared trade tickets that reflected the security to be traded; the number of shares to be traded; and the account to which the trade should be allocated. In general, upon receipt of these tickets, MFA's trading desk would place a time stamp on the ticket indicating when the ticket was received and when the trade was executed. The Government alleges that, in order to effectuate his scheme, Motz would send trade tickets to the MFA trading desk in the morning without specifying the accounts to which the trades should be allocated. Motz would then instruct the trading desk where to allocate securities much later in the day usually

just before the market closed. If the securities appreciated in value, he would instruct the trading desk to allocate the securities to the favored accounts. If the securities depreciated in value he would instruct the trading desk to allocate the securities to one of his discretionary trading accounts. The Government alleges that, to conceal the scheme, Motz altered the MFA trading tickets to create the false impression that he allocated trades to favored accounts at the time the securities were purchased.

## II.  DISCUSSION

### A.  Count One - Securities Fraud

Motz raises a number of different challenges to Count One. The Court will address each in turn.

### 1. Whether Venue is Lacking in the EDNY

Motz contends that venue is lacking in the Eastern District of New York because the "cherry-picking" scheme alleged in the superseding indictment was carried out in Manhattan. It is well-established that "[b]oth the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was 'committed.'" United States v. Ramirez, 420 F.3d 134, 138 (2d Cir. 2005) (citing U.S. Const. amend. IV, and Fed. R. Crim. P. 18). Accordingly, at trial, the Government carries the burden to demonstrate the propriety of the chosen venue by a preponderance of the evidence. Id. at 139 (citing United States v. Smith, 198 F.3d 377, 384 (2d Cir. 1999)). However, when faced with a *pre-trial* venue

challenge, the Government need only show that the superseding indictment alleges facts sufficient to support venue. United States v. Bronson, No. 05-CR-714, 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007).

Here, Count One alleges generally that the charged securities fraud scheme occurred "within the Eastern District of New York and elsewhere." In particular, the Government alleges that Motz directed certain of the fraudulent account allocations by sending faxes to MFA from his residence in Quogue and the Quogue Mayor's Office on the East End of Long Island. At the motion to dismiss stage, these allegations suffice to allege venue in the Eastern District of New York. See United States v. Stein, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006) (holding that "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied."); United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003) (same). Thus, the Defendant's motion to dismiss Count One for lack of venue is denied without prejudice and with leave to renew at the trial. See United States v. Elcock, No. 07-CR-582, 2008 WL 123842, at *4 (S.D.N.Y. Jan. 10, 2008) (denying a defendant's pre-trial venue challenge without prejudice and with leave to renew subject to Fed. R. Crim. P. 29); United States v. Valencia Rugeles, No. 04-CR-363, 2007 WL 1540981, at *2 (S.D.N.Y. May 24, 2007) (same).

**2. Whether the Court Should Transfer Venue to the SDNY**

Fed. R. Crim. P. 21(b) provides that, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." In deciding a motion to transfer venue, courts are guided by ten factors: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) possible disruption of the defendant's business if the case is not transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each district involved; and (10) any other special elements which might affect the transfer. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44, 84 S. Ct. 769, 11 L. Ed. 2d 674 (1964); United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979); United States v. Brooks, No. 08-CR-35, 2008 WL 2944626, at *1 (S.D.N.Y. Jul. 31, 2008). "No one of these considerations is dispositive, and 'it remains for the court to try to strike a balance and determine which factors are of greatest importance.'" United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990) (quoting United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990)).

"As a general rule, a criminal prosecution should be retained in the original district" in which it was filed. United States v. United States Steel Corp., 233 F. Supp.

154, 157 (S.D.N.Y. 1964). Accordingly, the burden of justifying a transfer under Fed. R. Crim. P. 21 rests with the defendant. United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000) (citing United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997) and United States v. Persico, 621 F. Supp. 842, 858 (S.D.N.Y. 1985)). Ultimately, the determination of a Fed. R. Crim. P. 21(b) motion is committed to the sound discretion of the Court. Maldonado-Rivera, 922 F.2d at 966 (citations omitted).

### a. The Location of the Defendants

This factor cuts decidedly against transferring the case. Although Motz formerly worked four days per week in MFA's Manhattan office, MFA is no longer in business and Motz currently lives on Long Island in Quogue. The Court also notes that Motz's venue challenge is significantly less compelling given that he is an elected official within this district.

### b. The Location of Possible Witnesses

This factor is somewhat difficult to analyze because the Government has not yet produced a list of the witnesses that will be called to testify at the trial. However, the Government represents that while many of the potential witnesses may work in Manhattan, many of them happen to live on Long Island. Without more information about the location of prospective witnesses, the Court finds that this factor does not favor either party's position.

### c. Location of the Events at Issue

This factor appears to favor Motz. Although the Government has suggested that certain parts of the alleged scheme were carried out on Long Island—namely the recruitment of investors and some of the account allocations—most of the conduct committed in furtherance of the alleged scheme seems to have taken place in Manhattan.

### d. Location of Documents and Records

This factor carries no weight in the Court's analysis. Although the bulk of the documents and records at issue were produced out of MFA's former office in Manhattan, discovery has already been completed. It makes little sense to have venue turn on the original location of documents and records that have already been produced to the respective parties.

### e. Possible Disruption of the Defendants' Businesses

Motz's papers make no mention of how a trial might disrupt his business affairs. The Court is not concerned that the trial will disrupt business at MFA because the company is now defunct. Contrary to Motz's suggestion, the fact that a trial in Central Islip might interfere with the new business endeavors of former MFA employees *who are not defendants in this case* is irrelevant to the Court's analysis.

### f. Expense to the Parties

Motz makes no effort to explain why litigating this case in Central Islip would prove more costly. Accordingly, this factor weighs against transferring the case

### g. Location of Counsel

This factor clearly favors a transfer as counsel for both Defendants have their offices in Manhattan. However, in light of Central Islip's proximity to Manhattan, this is not a major factor.

### h. Relative Accessibility of Central Islip

As noted above, counsel for both Defendants have their offices in Manhattan and most of the prospective witnesses in this case apparently live in the New York metropolitan area. The courthouse is roughly 50 miles from Motz's counsel's office in Manhattan and Central Islip is accessible on the Long Island Railroad. Under the circumstances, the Court finds that this factor weighs somewhat against a venue transfer.

### i. Docket Conditions in the EDNY and SDNY

This factor carries no weight in the Court's analysis because it is difficult to discern, with any degree of precision, whether the respective dockets favor or disfavor a transfer of venue. The Court declines to speculate—simply by looking at docket statistics—about whether the trial would be delayed in the event of a transfer to the Southern District of New York.

### j. Special Elements

The parties have not identified—and the Court is not aware of—any special circumstances in this case that either favor or disfavor a transfer of venue.

After a review of the Platt factors, the Court finds that Motz has failed to meet his burden to show that this case should be transferred to the Southern District of New York. See United States Steel Corp., 233 F. Supp. at 157 (observing that "[t]o warrant a transfer . . . it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome" and that the Court's inquiry "must take into account any countervailing considerations which may militate against removal."). Although two of the ten factors—the location of the events in question and the location of counsel—favor Motz's position, neither consideration is of such importance that a transfer of venue is appropriate. In fact, if anything, the Court's balancing of these ten factors tips against transferring this case to the Southern District of New York. Accordingly, the Defendant's motion to transfer venue is denied.

### 3. Whether Certain Trades are Barred by the Statute of Limitations

The applicable statute of limitations governing Count One provides that a defendant must be prosecuted "within five years after such offense shall have been committed." 18 U.S.C. § 3282. Here, the original indictment issued on August 27,

2008. Motz contends that all of the securities transactions alleged in Count One which occurred before August 27, 2003 are beyond the five year statute of limitations.

Generally, a criminal offense is committed when the offense has been completed. Toussie v. United States, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). However, "[t]he time at which a crime is 'complete' depends largely on the nature of the crime. Some crimes are 'instantaneous'; others are 'continuing.'" United States v. Eppolito, 543 F.3d 25, 46 (2d Cir. 2008) (citations omitted). Where the crime charged constitutes a "continuing offense," the crime is not completed—and therefore the statute of limitations does not begin to run—until "the conduct has run its course." Id. Therefore, the question for the Court is whether the alleged scheme is a "continuing offense" such that the Government may prosecute Motz for trades that were made more than five years prior to the indictment.

The Supreme Court has explained that an offense is deemed "continuing" for statute of limitations purposes only where "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Toussie, 397 U.S. at 115. In analyzing whether either of these conditions are met, "[t]he Supreme Court has cautioned . . . that the continuing offense doctrine 'should be applied only in limited circumstances,' and continuing offenses 'are not to be too readily found,' since 'criminal limitations statutes are to be liberally interpreted in

favor of repose.'" See United States v. Rivlin, No. 07-CR-524, 2007 WL 4276712, at *2 (S.D.N.Y. Dec. 5, 2007) (quoting Toussie, 397 U.S. at 115-16) (internal citation omitted).

The explicit language of 18 U.S.C. § 1348 does not compel the conclusion that 18 U.S.C. § 1348 should be construed as a continuing offense. Thus, following the Supreme Court's guidance in Toussie, the Court's task is to determine whether the nature of the crime itself—securities fraud—is such that Congress "must assuredly" have intended to treat it as a continuing offense. Although Motz did allegedly engage in a course of repeated criminal conduct in violation of 18 U.S.C. § 1348, it does not necessarily follow that 18 U.S.C. § 1348 is a continuing offense. See Rivlin, 2007 WL 4276712, at *3 (quoting United States v. Yashar, 166 F.3d 873, 877 (7th Cir. 1999), and United States v. Jaynes, 75 F.3d 1493, 1506 n.12 (10th Cir. 1996)) (observing that "'separate offenses may be part of a common scheme without being 'continuing' for limitation purposes.'"). As District Judge Sidney Stein has aptly explained, there is a distinction to be drawn "between conduct that is deemed a 'continuing offense' under *Toussie* and conduct that constitutes a continuing course of criminal activity, but which is not deemed 'continuing' for limitations purposes." Rivlin, 2007 WL 4276712, at *2.

"To establish whether Congress intended to treat an offense as 'continuing,'" courts consider whether the [statute itself] 'clearly contemplate[s] a prolonged course

favor of repose.'" See United States v. Rivlin, No. 07-CR-524, 2007 WL 4276712, at *2 (S.D.N.Y. Dec. 5, 2007) (quoting Toussie, 397 U.S. at 115-16) (internal citation omitted).

The explicit language of 18 U.S.C. § 1348 does not compel the conclusion that 18 U.S.C. § 1348 should be construed as a continuing offense. Thus, following the Supreme Court's guidance in Toussie, the Court's task is to determine whether the nature of the crime itself—securities fraud—is such that Congress "must assuredly" have intended to treat it as a continuing offense. Although Motz did allegedly engage in a course of repeated criminal conduct in violation of 18 U.S.C. § 1348, it does not necessarily follow that 18 U.S.C. § 1348 is a continuing offense. See Rivlin, 2007 WL 4276712, at *3 (quoting United States v. Yashar, 166 F.3d 873, 877 (7th Cir. 1999), and United States v. Jaynes, 75 F.3d 1493, 1506 n.12 (10th Cir. 1996)) (observing that "'separate offenses may be part of a common scheme without being 'continuing' for limitation purposes.'"). As District Judge Sidney Stein has aptly explained, there is a distinction to be drawn "between conduct that is deemed a 'continuing offense' under *Toussie* and conduct that constitutes a continuing course of criminal activity, but which is not deemed 'continuing' for limitations purposes." Rivlin, 2007 WL 4276712, at *2.

"To establish whether Congress intended to treat an offense as 'continuing,'" courts consider whether the [statute itself] 'clearly contemplate[s] a prolonged course

of conduct.'" Rivlin, 2007 WL 4276712, at *3 (quoting Toussie, 397 U.S. at 120). A continuing offense is not simply "an offense that continues in a factual sense, as where a defendant engaged in a course of conduct comprised of repeated criminal violations," but instead refers to a substantive crime that Congress established as continuing. Id. at *2. Traditional examples of "continuing offenses" include conspiracy, escape from federal custody, kidnapping, and crimes of possession. Id. (citing United States v. Rodriguez-Moreno, 526 U.S. 275, 281-82, 119 S. Ct. 1239, 143 L. Ed. 2d 388 (1999) (kidnapping); United States v. Bailey, 444 U.S. 394, 413, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980) (escape from federal custody); United States v. Waters, 23 F.3d 29, 36 (2d Cir. 1994) (unlawful possession of a firearm); United States v. McGoff, 831 F.2d 1071, 1078 (D.C. Cir. 1987)). Each of these crimes, by their nature, continue after the offense is initially committed. For example, a defendant who escapes from federal custody continues to violate 18 U.S.C. § 751(a) until he is apprehended.

Although it is true that securities fraud schemes are frequently carried out over a period of time, 18 U.S.C. § 1348 itself does not contemplate a prolonged course of conduct. Based upon the requirements of 18 U.S.C. 1348(1), each time Motz executed an allegedly fraudulent trade, the requisite elements of securities fraud were satisfied and the applicable statute of limitations began to run with respect to that violation. See United States v. Mahaffy, No. 05-CR-613, 2006 WL 2224518, at *12 (E.D.N.Y.

Aug. 2, 2006) (noting that a violation of 18 U.S.C. § 1348 requires proof of three elements: "(1) fraudulent intent (2) a scheme or artifice to defraud and (3) a nexus with a security."). The fact that Motz is charged with repeatedly violating the statute over a period of time pursuant to the same scheme does not transform 18 U.S.C. § 1348 into a "continuing offense" for statute of limitations purposes. See Rivlin, 2007 WL 4276712, at *3 (quoting Yashar, 166 F.3d at 877) (observing that "[i]t is not the active or passive nature of a defendant's actions that matters, but rather whether the statute describes an offense that by its nature continues after the elements have been met.").

Accordingly, Motz's motion for partial dismissal of Count One is granted. The Government may only prosecute Motz for allegedly fraudulent trades that occurred within the five years preceding the August 27, 2008 indictment.

**4. Whether 18 U.S.C. § 1348 is Unconstitutionally Vague**

Motz contends that 18 U.S.C. § 1348(1) is itself unconstitutionally vague because the statute's breadth creates no limitation on the scope of its application. The statute makes it a crime to "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . to defraud any person in connection," with the securities of publicly traded companies. 18 U.S.C. § 1348(1). According to the legislative history, the overarching purpose of the statute was to broaden the range of conduct proscribed by existing federal securities laws. See 148 Cong. Rec. S7420-21 (daily ed. July 26, 2002)

(statement of Sen. Leahy), available at 2002 WL 1731002 (noting that 18 U.S.C. was "intended to provide needed enforcement flexibility in the context of publicly traded companies to protect shareholders and prospective shareholders against all the types of schemes and frauds which inventive criminals may devise in the future.").

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). The Second Circuit has found that when "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" Id. (quoting United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993)). Here, it is clear that 18 U.S.C. § 1348 does not implicate Motz's rights under the First Amendment. The Court's task, then, is to determine whether the statute is unconstitutionally vague as applied.

When faced with an "as applied" vagueness challenge, courts engage in a two-part inquiry. Nadi, 996 F.2d at 550. "[A] court must first determine whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law 'provide[s] explicit standards

for those who apply [it].'" Id. (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 2299, 33 L. Ed. 2d 222 (1972), and United States v. Schneiderman, 968 F.2d 1564, 1568 (2d Cir. 1992)).

Motz does not articulate why a person of ordinary intelligence would be unable to understand the conduct prohibited by 18 U.S.C. § 1348. In other words, Motz has failed to show that the language of 18 U.S.C. § 1348 is so vague as to "create[] a trap for the unwary and permit[] arbitrary enforcement." Nadi, 996 F.2d at 550. The statute's language is intentionally broad because Congress sought to create a mechanism by which prosecutors could combat the myriad of ever-evolving securities fraud schemes.

With regard to the second prong of the analysis—whether the law provides explicit standards to be applied—the Court notes that the requisite elements of the statute are straightforward. In order to prove a violation of the 18 U.S.C. § 1348, the Government must show: "(1) fraudulent intent (2) a scheme or artifice to defraud; and (3) a nexus with a security." Mahaffy, 2006 WL 2224518, at *12. The Court finds that this standard is sufficiently clear to prevent the arbitrary or discriminatory application of 18 U.S.C. § 1348. Accordingly, Motz's "as applied" challenge is denied.

**5. Whether Count One is Unconstitutionally Vague**

Motz contends that Count One is unconstitutionally vague and must therefore be dismissed because the superseding indictment fails to describe the specific victims of the alleged scheme. However, as the Court has already observed, in a securities fraud scheme such as the one alleged, the Government need not specify which MFA client accounts were victimized by each allegedly fraudulent trade. Here, because the Defendant "cherry-picked" the profitable trades for the benefit of MFA, Mezzacappa Partners, L.P., and the Third Millennium Fund, each client with a discretionary trading account with MFA could conceivably be considered a victim because these clients could have benefitted from the profitable trades. The Government need not comb through the investment profiles and cash levels of each discretionary account to determine what accounts could have benefitted from each profitable trade. This level of detail is well-beyond the scope of an indictment.

**6. Whether Count One Alleges a Cognizable Claim Under 18 U.S.C. § 1348**

Motz argues that Count One fails to allege a cognizable claim under 18 U.S.C. § 1348. Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Civ. P. 7(c). This requirement is not particularly onerous and the Second Circuit has repeatedly upheld "indictments that 'do little more than to track the language of the statute charged and state the time and

place (in approximate terms) of the alleged crime.'" United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir.), cert. denied, 423 U.S. 832, 96 S. Ct. 54, 46 L. Ed. 2d 50 (1975)). To be legally sufficient, the indictment must specify the elements of the offense in enough detail to give a defendants notice of the charges against him and to permit him to plead double jeopardy in a future prosecution based on the same events. Id. (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir.), cert. denied, 504 U.S. 926, 112 S. Ct. 1982, 118 L. Ed. 2d 580 (1992)).

Here, it is beyond serious dispute that the superseding indictment alleges, in considerable detail, a scheme to defraud in connection with publicly traded securities. However, Motz contends that the superseding indictment fails to adequately allege the required element of fraudulent intent. The Court disagrees.

The parties agree that because "the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes," the Court's analysis should be guided by the caselaw construing those statutes. Mahaffy, 2006 WL 2224518, at *11; see 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). To show that a defendant possessed fraudulent intent within the meaning of the mail and wire fraud statutes, the Government must show that the defendant "contemplated some actual harm or injury to [his] victims." United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987). The Second Circuit has held that "where the

place (in approximate terms) of the alleged crime.'" United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir.), cert. denied, 423 U.S. 832, 96 S. Ct. 54, 46 L. Ed. 2d 50 (1975)). To be legally sufficient, the indictment must specify the elements of the offense in enough detail to give a defendants notice of the charges against him and to permit him to plead double jeopardy in a future prosecution based on the same events. Id. (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir.), cert. denied, 504 U.S. 926, 112 S. Ct. 1982, 118 L. Ed. 2d 580 (1992)).

Here, it is beyond serious dispute that the superseding indictment alleges, in considerable detail, a scheme to defraud in connection with publicly traded securities. However, Motz contends that the superseding indictment fails to adequately allege the required element of fraudulent intent. The Court disagrees.

The parties agree that because "the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes," the Court's analysis should be guided by the caselaw construing those statutes. Mahaffy, 2006 WL 2224518, at *11; see 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). To show that a defendant possessed fraudulent intent within the meaning of the mail and wire fraud statutes, the Government must show that the defendant "contemplated some actual harm or injury to [his] victims." United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987). The Second Circuit has held that "where the

'necessary result' of the [defendant's] scheme is to injure others, fraudulent intent may be inferred from the scheme itself." United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994) (citations omitted).

Here, the cherry-picking scheme described in the superseding indictment contemplated harm to the allegedly disfavored accounts. The alleged scheme, by its very nature, allowed Motz and MFA to shift the risk of unprofitable trades entirely to disfavored client accounts. By selectively allocating the profitable trades, Motz generated virtually risk-free profits for MFA and two hedge fund clients at the expense of clients with discretionary accounts. Under the circumstances, fraudulent intent can be inferred because the necessary result of the alleged scheme was to disadvantage clients with discretionary accounts.

The Government has adequately alleged all of the requisite elements of 18 U.S.C. § 1348. Accordingly, Motz's motion to dismiss Count One is denied.

**B. Count Two - Document Alteration**

Motz argues that Count Two should be dismissed because venue is lacking in the Eastern District of New York. In particular, Motz points out—and the Government concedes—that the evidence developed thus far is insufficient to prove that the charged acts of document alteration took place in this district. Accordingly, Count Two is dismissed without prejudice. The Government may choose to present the document alteration count to a grand jury in the Southern District of New York or

attempt to replead the count in the Eastern District of New York. In any event, having dismissed Count Two on venue grounds, the Court will not address Motz's additional challenges to the document alteration charge.

## III. CONCLUSION

With respect to Count One, the Court finds that the Government has, at the pre-trial stage, offered allegations sufficient to show that venue is proper in the Eastern District of New York. The Court finds that the statute is constitutional as applied in this case; the superseding indictment is not unconstitutionally vague; and that the Government has alleged a cognizable claim under 18 U.S.C. § 1348. However, the Government may only prosecute Motz for allegedly fraudulent trades that occurred within the five years preceding the August 27, 2008 indictment.

The Court also finds that Count Two should be dismissed without prejudice because venue is lacking in the Eastern District of New York.

**SO ORDERED.**

Dated: Central Islip, New York
August 14, 2009

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge